**FILED**

U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 2 6 2008

JAMES W. McCORMACK, CLERK

BY: _____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

KIZZIE GRAY            4 · 0 8 - C V - 0 0 2 4 5 JMM    **PLAINTIFF**

This case assigned to District Judge _Moody_

VS.                NO: _____ and to Magistrate Judge _Cohen_

MERCK & COMPANY, INC.                       **DEFENDANT**

Plaintiff, Kizzie Gray, for her of Complaint against the Defendant, states:

1. Plaintiff, Kizzie Gray, is a citizen of White County, Arkansas, P.O. Box 166, Searcy, Arkansas 72145. Plaintiff, Kizzie Gray, regularly ingested Fosamax in the months leading up to her diagnosis of Osteonecrosis of the jaw.

2. Defendant, Merck & Co., Inc. (hereinafter "Merck"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business at One Merck Drive, White House Station, NJ 08889. Jurisdiction of this case is based on 28 USC § 1332.

3. At all times relevant hereto, Defendant Merck was engaged in the business of testing, developing, manufacturing, distributing, licensing, labeling, and marketing, either directly or indirectly through third parties or related entities, the pharmaceutical, Fosamax.

4. At all relevant times, Defendant was responsible for, or involved in, designing, manufacturing, marketing, developing, testing, labeling, promoting, distributing and/or selling its product, the prescription drug Fosamax.

5. In September 1995, the United States Food and Drug Administration ("FDA") approved Defendant's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease. Alendronate is marketed by Defendant as "Fosamax."

6. Fosamax falls within a class of drugs known as bisphosphonates, which are used for treating bone conditions such as osteopenia, osteoporosis and Paget's disease. There are two

classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates.  The nitrogenous bisphosphonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (Fosamax).  The non-nitrogenous bisphosphonates include the following:  etrinodate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid).  Alendronate contains a nitrogen atom.  The Physicians Desk Reference ("PDR") for Fosamax confirms that the molecule contains a nitrogen atom.

7.    Throughout the 1990's and 2000's, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy.  As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Defendant, particularly with its heightened knowledge and experience, knew or should have known that Fosamax, as a nitrogenous bisphosphonates, shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

8.    Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates, including Fosamax, inhibit endothelial cell function. Similarly, Defendant, particularly with its heightened knowledge and experience, knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patient's mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

9.    Defendant, particularly with its heightened knowledge and experience, also knew or should have known that these factors combine to create a compromised vascular supply in the affected area.  As a result, a minor injury or disease can turn into a non-healing wound.  That, in

2

turn, can progress to widespread necrosis (bone death) and ostemony elitis (inflammation of bone marrow).

10.    Dentists are now being advised by dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on Fosamax.

11.    Once the jaw complications begin and become symptomatic, they are very difficult to treat and typically are not reversible.

12.    Shortly after Defendant began selling Fosamax, reports of osteonecrosis of the jaw and other various dental complications among Fosamax users began surfacing, indicating that Fosamax shared the effects of other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study of the risk of osteonecrosis of the jaw relative to Fosamax. Rather than evaluating and verifying the safety of Fosamax with respect to osteonecrosis of the jaw, Defendant proposed further uses of Fosamax, such as Fosamax-D, and sought to extend the exclusivity period of Fosamax through 2018.

13.    Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

14.    Since Fosamax was released, the FDA has received a significant number of reports of osteonecrosis of the jaw among users of Fosamax.

15.    On August 24, 2004, the FDA posted its ODS Postmarketing Safety Review on bisphosphonates, including Fosamax. This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

16.    As a result of the FDA review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The review indicated that

the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, Fosamax.

17.  Thereafter, the FDA recommended and stated that the labeling for Fosamax should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw. Defendant refused to accede to the FDA's request.

18.  Rather than warn patients, and despite Defendant's knowledge about the increased risk of osteonecrosis of the jaw on patients using Fosamax, Defendant continued to defend Fosamax, mislead physicians and the public, and minimize unfavorable findings.

19.  Fosamax is one of Defendant's top selling drugs, averaging more that $3 billion a year in sales.

20.  Consumers, including Plaintiff, who have used Fosamax for treatment of osteoporosis, had several alternative safer products available to treat their condition.

21.  Defendant knew of the significant risk of dental and oral complications caused by ingestion of Fosamax, but Defendant did not adequately and sufficiently warn consumers, including Plaintiffs, or the medical community, of such risks.

22.  As a direct result, Plaintiff was prescribed Fosamax and has been permanently injured, having suffered serious injuries and damages from the ingestion of Fosamax.  Plaintiff requires and will in the future require ongoing medical care and treatment.

23.  Plaintiff has suffered mental anguish from the knowledge that she will have life-long complications as a result of the injuries she sustained form the use of Fosamax.

24.  Plaintiff was prescribed and began taking Fosamax in October, 2001.

25.  Plaintiff used Fosamax as prescribed and in a foreseeable manner.

4

26.  As a direct and proximate result of using Fosamax, Plaintiff has suffered osteonecrosis of the jaw and the loss of bone mass in the jaw and is currently in treatment for her condition.

27.  Plaintiff, as a direct and proximate result of using Fosamax, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

28.  Plaintiff used Fosamax which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

29.  Plaintiff would not have used Fosamax had Defendant properly disclosed the risks associated with the drug.  Alternatively, Plaintiff would have known of the risks of Fosamax and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

30.  Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with taking Fosamax.

31.  As a result of Defendant's actions, Plaintiff and her prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## COUNT I
## PRODUCTS LIABILITY—FAILURE TO WARN

32.  Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

33.  Defendant Merck researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the pharmaceutical, Fosamax, and in the course of same, directly advertised or

marketed the product to the FDA, consumers or persons responsible for consumers, and therefore had a duty to warn of the risks associated with the use of Fosamax.

34. Fosamax was under the exclusive control of Defendant as aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side effects and complications associated with the use of Fosamax, and the comparative severity, duration and the extent of the risk of injury with such use.

35. Defendant Merck has failed to timely and reasonably warn of material facts regarding the safety and efficacy of Fosamax so that no medical care provider would have prescribed, or no consumer would have used Fosamax had those facts been made known to such providers and consumers.

36. Defendant Merck has failed to perform or otherwise facilitate adequate testing in that such testing would have shown that Fosamax posed serious and potentially life-threatening side effects and complications with respect to which full and proper warnings accurately and fully reflecting the symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiffs.

37. Fosamax, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold and otherwise released into the stream of commerce by Defendant, was defective due to inadequate post-marketing warnings and/or instruction because, after Defendant knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of Fosamax, Defendant failed to provided adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiffs, and continued to promote Fosamax aggressively.

6

38.  As direct and proximate result of the conduct of Defendant Merck as aforesaid, Plaintiff was diagnosed with osteonecrosis of the jaw causing permanent injury to Plaintiff, Kizzie Gray, and causing physical, emotional and economic injury to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant Merck for compensatory, and punitive damages, together with interest, costs of suit, and all such other relief as the Court deems proper.

## COUNT II
### PRODUCTS LIABILITY—DEFECTIVE DESIGN

39.  Plaintiffs repeat and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

40.  Defendant is a researcher, developer, manufacturer, distributor, marketer, promoter, supplier and seller of Fosamax, which is defective and unreasonably dangerous to consumers.

41.  The aforementioned drug is defective in its design or formulation in that it is not reasonably fit, suitable or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.  The aforementioned drug is defective in design or formulation in that it lacks efficacy and/or it poses a greater likelihood of injury than similar drugs on the market and is more dangerous than ordinary consumers can reasonably foresee.

42.  The defective condition of the aforementioned drug  renders it unreasonably dangerous, and it was in this defective condition at the time it left the hands of Defendant.  The aforementioned drug was expected to and did reach consumers, including Plaintiffs, without substantial change in the condition in which it was designed, manufactured, labeled, sold, distributed, marketed, promoted, supplied and otherwise released into the stream of commerce.

7

43.  Plaintiff was unaware of the significant hazards and defects in the aforementioned drug.  The aforementioned drug was unreasonably dangerous in that it was more dangerous than would be reasonably contemplated by the ordinary user.  During the period that Plaintiff was taking the aforementioned drug, the medication was being utilized in a manner that was intended by Defendant.  At the time Plaintiff received and consumed the aforementioned drug, it was represented to be safe and free from latent defects.

44.  Defendant is strictly liable to Plaintiff for designing, manufacturing, and placing into the stream of commerce a product which was unreasonably dangerous for its reasonably foreseeable uses at the time it left the control of Defendant because of the design defects.

45.  Defendant knew or should have known of the danger associated with the use of the aforementioned drug, as well as the defective nature, but has continued to design, manufacture, sell, distribute, market, promote and/or supply the aforementioned drug so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the aforementioned drug.

46.  As a direct and proximate cause of the design defect and Defendant's misconduct as set forth herein, Plaintiff was diagnosed with osteonecrosis causing permanent injury and causing physical, emotional and economic injury to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory, treble and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## COUNT III
## PUNITIVE DAMAGES

47.  Plaintiff repeat and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

48.  Plaintiff is entitled to punitive damages because Defendant's failure to warn was reckless and without regard for the public's safety and welfare.  Defendant misled both the medical community and the public at large, including Plaintiff herein, by making false representations about the safety of Fosamax.  Defendant downplayed, understated and/or disregarded its knowledge of the serious and permanent side effects and risks associated with the use of Fosamax despite available information demonstrating that Fosamax was likely to cause serious and even fatal side effects to users.

49.  Defendant was or should have been in possession of evidence demonstrating that Fosamax caused serious side effects.  Nevertheless, Defendant continued to market Fosamax by providing false and misleading information with regard to safety and efficacy.

50.  Defendant failed to provide warnings that would have dissuaded physicians from prescribing Fosamax and consumers from purchasing and consuming Fosamax, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and/or purchasing and consuming Fosamax.

**WHEREFORE,** Plaintiff demands judgment against Defendant Merck for compensatory damages and punitive damages, together with interest, costs of suit and attorneys' fees and such other relief as the Court deems proper.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

51.  Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

52.  Merck manufactured, sold, distributed, marketed, and/or promoted Fosamax used by Plaintiff, and this drug was expected to, and did reach Plaintiff without a substantial change in condition.

53.  Defendant Merck, its agents and employees, in manufacturing, selling, distributing, supplying, marketing and/or promoting the drug Fosamax, expressly warranted that the drug was safe and effective as a medication for osteoporosis.

54.  Defendant Merck, its agents and employees, breached this warranty in that Fosamax was not safe and effective for its intended, reasonably foreseeable use as a medication for osteoporosis because of the risk of osteonecrosis of the jaw associated with its use and in light of other risks of serious injuries to foreseeable users.

55.  Defendant Merck, its agents and employees, failed to provide adequate warnings with Fosamax, rendering it unreasonably dangerous and unfit for the intended, reasonably foreseeable purposes for which it is used, in breach of warranty.

56.  Plaintiff justifiably and detrimentally relied upon the warranties and representations of Defendant in the purchase and use of the product.

57.  As a direct and proximate result of the acts and omissions of Defendant, Plaintiff ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries.  As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of ordinary pursuits and enjoyments of life.

**WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

10

**COUNT V**
**VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**(A.C.A. §4-88-101, _et seq_)**

58.  Plaintiff incorporates the preceding paragraphs as if set forth fully.

59.  Defendant has engaged in false, misleading and deceptive acts or practices as defined and proscribed by the Arkansas Deceptive Trade Practices Act ("ADTPA") with regard to the Fosamax sold to and used by Plaintiff.  Specifically, under the ADTPA, Merck is liable for false, misleading and deceptive acts and practices if they engaged in any of the following:

(1)  Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether good are original or new or of a particular standard, quality, grade, style, or model; A.C.A. §4-88-107 (a)(1)

(2)  Advertising the goods or services with the intent not to sell them as advertised; A.C.A. §4-88-107 (a)(3)

(3)  Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce or trade;  A.C.A. §4-88-107 (a)(10)

(4)  The act, use, or employment by any person of any deception, fraud, or false pretense; A.C.A. §4-88-108

(5)  The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission.  A.C.A. §4-88-108

60.  Defendant is liable for engaging in the following deceptive acts under the ADTPA, which include, but are not limited to:

A.  Defendant, having undertaken the manufacturing, marketing, dispensing, distribution, and promotion of the drug described herein, owed a duty to provide accurate and complete information regarding this product.

B.  Defendant's advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the

11

use of Fosamax was safe for human use and did not have unacceptable side effects;

C.    On information and belief, Defendant misrepresented to Plaintiffs and to members of the general public its knowledge about the propensities of the product to cause injuries such as those sustained by Plaintiff. Defendant concealed, failed to disclose, misstated, downplayed and understated the health hazards and risks associated with the use of Fosamax. Defendant falsely and deceptively kept relevant information from Fosamax users and minimized concernsregarding the safety of Fosamax to induce Plaintiff and the general public to purchase and use Fosamax;

D.    In justifiable and detrimental reliance on the truth of Defendant's representations about the safety of Fosamax, Plaintiff purchased the product and used the product in the manner and for the purpose intended as represented and instructed by Defendant;

E.    The representations, misrepresentations, acts and omissions made by Defendant deprived Plaintiff and other foreseeable users of Fosamax of the opportunity of free choice as to whether or not to expose themselves to the aforementioned dangers of ingesting Fosamax.

61.    These unconscionable, false and deceptive acts were done intentionally and/or with such a reckless disregard for the rights of Plaintiff that intent can be inferred.

62.    Plaintiff and her physician(s) relied on the misrepresentations and omissions to her detriment. Had Plaintiff had complete and accurate information, the physician(s) would not have prescribed and Plaintiff would have forgone the use of Fosamax entirely.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, punitive damages and costs of suit as provided by law.

12

## COUNT VI
## ARKANSAS PRODUCTS LIABILITYACT - NEGLIGENCE AND STRICT LIABILITY

Plaintiff repeats and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

63.   Defendant is liable to plaintiff pursuant to the Arkansas Products Liability Act.

64.   Defendant is under a duty to supply a product that is reasonably fit, suitable or safe for its intended use, such that it is not unreasonably dangerous and such that it does not cause injury to a reasonably foreseeable user.

65.   Defendant has failed to meet the obligation of supplying a product that is reasonably fit, suitable or safe for its intended purpose and which is not unreasonably dangerous, in that they have placed the product Fosamax into the stream of commerce when Fosamax had been defectively manufactured, defectively designed and failed to contain adequate warnings, labels or instructions.

66.   Plaintiff alleges that at all times, the product Fosamax was defective when it left Defendant's control and the product was not substantially altered prior to reaching plaintiff.

67.   As a direct and proximate result of the acts and omissions of Defendant, Plaintiff, a reasonably foreseeable consumer, ingested Fosamax and developed osteonecrosis of the jaw which resulted in physical impairment and other injuries.  As a further direct and proximate result of the acts and omissions of Defendant, Plaintiff has been prevented from pursuing her normal activities and employment, has experienced severe pain and suffering and mental anguish, and has been deprived of her ordinary pursuits and enjoyments of life.

13

## DAMAGES

68.    That as a direct and proximate result of the negligence, strict liability, product

liability and breach of warranty of the Defendants as alleged herein, Plaintiff has suffered the

following losses:

A.       Medical expenses which have been incurred in the past and are likely to be
         incurred in the future;

B.       Permanent physical impairment and disability;

C.       Pain, suffering and mental anguish experienced in the past and reasonalbly
         certain to be experienced in the future;

D.       Loss of earnings in the past and loss of earnings or earnings capacity
         reasonably expect to be lost in the future; and

E.       Scarring.

**WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory

damages, punitive damages and costs of suit all in excess of the federal jurisdictional limit and

as provided by law.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury as to all Counts.

Respectfully submitted,

The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR 72227
(501) 221-0444

By: _____
        George R. Wise, Jr.

AO 458 (Rev. 10/95)  Appearance

# UNITED STATES DISTRICT COURT

## LITTLE ROCK DIVISION

## NOTICE OF APPEARANCE

KIZZIE GRAY                         Case No:    4:08-CV-00245JMM

v.

MERCK & COMPANY, INC.


To the Clerk of this court and all parties of record:

Enter my appearance as counsel in this case for

      Merck & Company, Inc.


I certify that I am admitted to practice in this court.


_____May 6, 2008_____
Date

                                  
Signature

James M. Simpson
Print Name

77125
Bar Number

400 West Capitol Avenue, Suite 2000
Address

Little Rock         AR        72201-3522
City                State       Zip Code

501-370-1520
Phone Number

Simpson@fec.net
E-Mail

## CERTIFICATE OF SERVICE

I, James M. Simpson, hereby certify that on May 6, 2008, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

George R. Wise, Jr.
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR 72227

/s/ _____

Name:        James M. Simpson
Bar Number:        77125
Attorney for:        Merck & Company, Inc.
Law Firm Name:        Friday, Eldredge & Clark, LLP
Law Firm Address:        400 W. Capitol Ave., Suite 2000
City State ZIP:        Little Rock, AR  72201-3522
Phone Number:        501-376-2011
Email Address:        Simpson@fec.net

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

**KIZZIE GRAY**                                                                    **PLAINTIFF**

**VS.**                                        **No. 4:08-CV-00245 JMM**

**MERCK & COMPANY, INC.**                                                 **DEFENDANT**

**ANSWER AND AFFIRMATIVE DEFENSES
OF MERCK & CO., INC. AND DEMAND FOR JURY TRIAL**

Defendant, Merck & Co., Inc. ("Merck"), by and through its undersigned attorneys, hereby answers the Complaint. Merck denies all allegations set forth in the Complaint except to the extent such allegations are specifically admitted below:

1.      Merck lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of the first sentence of Paragraph 1. Merck denies each and every allegation of the second sentence of Paragraph 1, except Merck states that it is without knowledge as to whether and when Plaintiff ingested FOSAMAX®.

2.      Merck admits the allegations of the first sentence of Paragraph 2. The allegations of the second sentence of Paragraph 2 state a legal conclusion to which no response is required. To the extent that a response is required, Merck denies each and every allegation of the second sentence of Paragraph 2.

3.      Merck denies each and every allegation of Paragraph 3, except that it admits that Merck manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

4.     Merck denies each and every allegation of Paragraph 4, except that it admits that Merck manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

5.     Merck denies each and every allegation of Paragraph 5, except that Merck admits that it sought and, in 1995, first obtained FDA approval to manufacture and market FOSAMAX® 10 mg and FOSAMAX® 40 mg tablets, a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.     Merck denies any allegations in Paragraph 5 inconsistent with that prescribing information.

6.     Merck admits only that some bisphosphonates contain nitrogen and some do not and that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.  Merck denies any allegations in Paragraph 6 inconsistent with that prescribing information.   Merck respectfully refers the Court to the Physicians Desk Reference ("PDR") for FOSAMAX® for its actual language and full text.  Merck also refers the Court to the prescribing information for Aredia, Bondronat, Didronel, Bonefos, Loron, and Skelid, and denies any allegations in Paragraph 6 with respect to Aredia, Bondronat, Didronel, Bonefos, Loron, and Skelid inconsistent with that prescribing information.  Merck denies the remaining allegations of Paragraph 6.

7.     Merck denies each and every allegation of Paragraph 7.

8.     Merck denies each and every allegation of Paragraph 8.

9.     Merck denies each and every allegation of Paragraph 9.

10.    Merck is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 10.

11.    Merck denies each and every allegation of Paragraph 11.

12.    Merck denies each and every allegation of Paragraph 12.

13.    Merck denies each and every allegation of Paragraph 13.

14.    Merck denies each and every allegation of Paragraph 14.

15.    Merck denies each and every allegation of Paragraph 15, except that Merck admits that the FDA drafted an "ODS Postmarketing Safety Review," but respectfully refers the Court to said document for its actual language and full text.

16.    Merck denies each and every allegation of Paragraph 16.

17.    Merck denies each and every allegation of Paragraph 17.

18.    Merck denies each and every allegation of Paragraph 18.

19.    Merck denies each and every allegation of Paragraph 19, except that Merck admits that Fosamax product sales in 2007 amounted to approximately $3.05 billion.

20.    Merck is without knowledge as to whether Plaintiff used FOSAMAX®. Merck denies the remaining allegations in Paragraph 20.

21.    Merck denies each and every allegation of Paragraph 21.

22.    Merck is without knowledge as to whether Plaintiff was prescribed FOSAMAX®. Merck denies the remaining allegations in Paragraph 22.

23.    Merck denies each and every allegation of Paragraph 23.

24.    Merck is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 24.

25.    Merck is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 25.

26.    Merck denies each and every allegation of Paragraph 26.

27.    Merck denies each and every allegation of Paragraph 27.

28.    Merck is without knowledge or information sufficient to form a belief as to the allegations of Paragraph 28.

29.    Merck denies each and every allegation of Paragraph 29.

30.    Merck denies each and every allegation of Paragraph 30.

31.    Merck denies each and every allegation of Paragraph 31.

**COUNT I**
**PRODUCTS LIABILITY – FAILURE TO WARN**

32.    Merck repleads its answers to all other paragraphs of the Complaint, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

33.    Merck denies each and every allegation of Paragraph 33, except that Merck admits that it manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information. To the extent that the allegations of Paragraph 33 are conclusions of law, no response is required; to the extent that a response is deemed necessary, the allegations are denied and Merck respectfully refers the Court to the relevant legal standard, including any conflict of law rules.

34.    Merck denies each and every allegation of Paragraph 34.

35.    Merck denies each and every allegation of Paragraph 35.

36.    Merck denies each and every allegation of Paragraph 36.

37.    Merck denies each and every allegation of Paragraph 37.

38.    Merck denies each and every allegation of Paragraph 38.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

**COUNT II**
**PRODUCTS LIABILITY – DEFECTIVE DESIGN**

39.    Merck repleads its answers to all other paragraphs of the Complaint, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

40.    Merck denies each and every allegation of Paragraph 40, except that Merck admits that it manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information.

41.    Merck denies each and every allegation of Paragraph 41.

42.    Merck denies each and every allegation of Paragraph 42.

43.    Merck denies each and every allegation of Paragraph 43, except that Merck states that it is without knowledge as to the manner in which Plaintiff utilized FOSAMAX® and respectfully refers the Court to the FDA-approved prescribing information for any and all representations contained therein. Merck further avers that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.

44.    Merck denies each and every allegation of Paragraph 44.

45.    Merck denies each and every allegation of Paragraph 45.

46.    Merck denies each and every allegation of Paragraph 46.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## COUNT III
## PUNITIVE DAMAGES

47.     Merck repleads its answers to all other paragraphs of the Complaint, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

48.     Merck denies each and every allegation of Paragraph 48.

49.     Merck denies each and every allegation of Paragraph 49.

50.     Merck denies each and every allegation of Paragraph 50.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

51.     Merck repleads its answers to all other paragraphs of the Complaint, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

52.     Merck denies each and every allegation of Paragraph 52, except that Merck admits that it manufactured, marketed, and distributed the prescription medicine FOSAMAX® for prescription in accordance with its approved prescribing information and states that it is without knowledge as to the condition of the FOSAMAX® Plaintiff alleges she consumed.

53.    Merck denies each and every allegation of Paragraph 53, and respectfully refers the Court to the FDA-approved prescribing information for any and all representations contained therein.    Merck further avers that FOSAMAX® is a prescription medication approved by the FDA for prescription in accordance with its approved prescribing information.

54.    Merck denies each and every allegation of Paragraph 54.

55.    Merck denies each and every allegation of Paragraph 55.

56.    Merck denies each and every allegation of Paragraph 56.

57.    Merck denies each and every allegation of Paragraph 57.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## COUNT V
## VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT
### (A.C.A. §4-88-101, et seq)

58.    Merck repleads its answers to all other paragraphs of the Complaint, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

59.    Merck denies each and every allegation of the first sentence of Paragraph 59.    The allegations of the second sentence of Paragraph 59, including subparts (1) through (5), state a legal conclusion to which no response is required.    To the extent that a response is required, Merck denies each and every allegation of the second sentence of Paragraph 59, including subparts (1) through (5), and respectfully refers the Court to the relevant legal standard.

60.    Merck denies each and every allegation of Paragraph 60, including each and every allegation of subparts (A) through (E).

61.    Merck denies each and every allegation of Paragraph 61

62.    Merck denies each and every allegation of Paragraph 62.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## COUNT VI
## ARKANSAS PRODUCTS LIABILITY ACT – NEGLIGENCE AND STRICT LIABILITY

Merck repleads its answers to all other paragraphs of the Complaint, and by this reference hereby incorporates the same herein in this paragraph, and makes the same a part hereof as though fully set forth *verbatim*.

63.    Merck denies each and every allegation of Paragraph 63.

64.    The allegations of Paragraph 64 state a legal conclusion to which no response is required.  To the extent that a response is required, Merck denies each and every allegation of Paragraph 64 and respectfully refers the Court to the relevant legal standard, including any conflict of law rules.

65.    Merck denies each and every allegation of Paragraph 65.

66.    Merck denies each and every allegation of Paragraph 66.

67.    Merck denies each and every allegation of Paragraph 67.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## DAMAGES

68.    Merck denies each and every allegation of Paragraph 68, including each and every allegation of subparts (A) through (E).

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

## AFFIRMATIVE DEFENSES

Discovery and investigation may reveal that any one or more of the following affirmative defenses should be available to Merck in this matter. Merck, therefore, asserts said affirmative defenses in order to preserve the right to assert them. Upon completion of discovery, and if the facts warrant, Merck may withdraw any of these affirmative defenses as may be appropriate. Further, Merck reserves the right to amend its Answer to assert additional defenses, cross-claims, counterclaims, and other claims and defenses as discovery proceeds. Further answering and by way of additional defense, Merck states as follows:

### FIRST AFFIRMATIVE DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the applicable statute of limitations and is otherwise untimely.

### SECOND AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

Each and every claim asserted or raised in the Complaint is barred by the doctrines of estoppel, waiver or statutory and regulatory compliance.

BA2/341260

9

## FOURTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other intervening cause or causes.

## FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts claims based on Merck's adherence to and compliance with applicable state laws, regulations and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

## SIXTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts claims based upon an alleged failure by Merck to warn Plaintiff directly of alleged dangers associated with the use of FOSAMAX®, such claims are barred under the learned intermediary doctrine because Merck has discharged its duty to warn in its warnings to the prescribing physician.

## SEVENTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were cause in whole or in part by the contributory negligence of the allegedly injured Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

Any liability that might otherwise be imposed upon this Defendant is subject to reduction by the application of the doctrine of comparative fault and/or negligence.

## NINTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were only sustained after Plaintiff knowingly, voluntarily, and willfully

assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any medicine or pharmaceutical preparation manufactured or distributed by Merck or other manufacturer.

## TENTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Merck and over whom Merck had no control and for whom Merck may not be held accountable.

## ELEVENTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were proximately caused by Plaintiff's misuse or abuse of FOSAMAX®.

## TWELFTH AFFIRMATIVE DEFENSE

If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses resulted from Plaintiff's pre-existing and/or unrelated medical, genetic and/or environmental conditions, diseases, or illnesses, idiosyncratic reactions, subsequent medical conditions or natural courses of conditions for which this Defendant is not responsible.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff relies upon any theory of breach of warranty, such claims are also barred for lack of timely notice of breach and/or lack of privity.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part under the applicable state law because FOSAMAX® was subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because the product at issue was made in accordance with the state of the art at the time it was manufactured.

## SIXTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks punitive damages for the conduct which allegedly caused the injuries asserted in the Complaint, such an award would, if granted, violate Merck's state and federal constitutional rights.

## SEVENTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks punitive damages for an alleged act or omission of Merck, no act or omission was malicious, willful, wanton, reckless or grossly negligent and, therefore, any award of punitive damages is barred.

## EIGHTEENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff seeks punitive damages, such claim is barred because FOSAMAX® and its labeling was subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part under comment k to Section 402A of the Restatement (Second) of Torts.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Merck provided legally adequate "directions or warnings" as to the use of FOSAMAX® and any other medicine or pharmaceutical preparation Plaintiff alleges to have taken within the meaning of comment j to Section 402A of the Restatement (Second) of Torts.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under Section 4, *et seq.*, of the Restatement (Third) of Torts: Products Liability.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under comment f to Section 6 of the Restatement (Third) of Torts: Products Liability.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

There is no practical or technically feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended function of FOSAMAX®.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by failure to mitigate damages.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Merck's conduct conforms with medical knowledge.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to recovery for strict liability because Plaintiff cannot state claims founded in strict liability because,

13

among other things, comments j and k to Section 402A of the Restatement (Second) of Torts relegates Plaintiff's claims to a negligence cause of action.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

All activities of Merck as alleged in the Complaint were expressly authorized and/or regulated by a government agency. Therefore, Plaintiff's claims pertaining to unfair or deceptive practices are barred.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

With respect to each and every cause of action, Plaintiff is not entitled to recover because if the product involved was unsafe, which Merck denies, then it was unavoidably unsafe as defined in Restatement of Torts. The apparent benefits of the product exceeded any apparent risk given the scientific knowledge available when the product was marketed.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Merck's advertisements and labeling with respect to the products which are the subject matter of this action were not false or misleading and, therefore, constitute protected commercial speech under the applicable provisions of the United States and Arkansas Constitutions.

## THIRTIETH AFFIRMATIVE DEFENSE

The public interest in the benefit and availability of the product which is the subject matter of this action precludes liability for risks, if any, resulting from any activities undertaken by Defendant, which were unavoidable given the state of human knowledge at the time those activities were undertaken. With respect to Plaintiff's

claims, if it is determined there is a risk inherent in the product which is the subject matter of this action, then such risk, if any, is outweighed by the benefit of the product.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

At all times relevant herein, any product which is the subject matter of this action manufactured and distributed by Merck in any state in the United States was manufactured and distributed in a reasonable and prudent manner based upon available medical and scientific knowledge and further was processed and distributed in accordance with and pursuant to all applicable regulations of the FDA.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

With respect to each and every purported cause of action, the acts of Merck were at all times done in good faith and without malice.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

To the extent there were any risks associated with the use of the product which is the subject matter of this action which Merck knew or should have known and which gave rise to a duty to warn, Merck at all times discharged such duty through appropriate and adequate warnings in accordance with federal and state law.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff has not sustained an ascertainable loss of property or money.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered any actual injury or damages.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the doctrine of economic loss.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

This case is more appropriately brought in a different venue as defined in 28 U.S.C. §1404(a).

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

This case is subject to dismissal and/or transfer to another venue pursuant to 28 U.S.C. §1406(a).

### THIRTY-NINTH AFFIRMATIVE DEFENSE

This case is subject to dismissal or stay on the grounds of *forum non conveniens.*

### FORTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims of fraud are not pleaded with the required particularity.

### FORTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff cannot recover for the claims asserted because Plaintiff has failed to comply with the conditions precedent necessary to bring this action and/or each particular cause of action asserted by Plaintiff.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for breach of warranty are barred because Plaintiff did not rely on such warranties and the claims are otherwise barred for lack of timely notice, lack of privity and/or because the alleged warranties were disclaimed.

### FORTY-THIRD AFFIRMATIVE DEFENSE

An asymptomatic plaintiff lacks standing because he has suffered no damages and no injury-in-fact.

## FORTY-FOURTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff asserts claims based on Merck's adherence to and compliance with applicable state laws, regulations and rules, such claims are preempted by federal law under the Final Rule, Requirements on Content and Format of Labeling for Human Prescription Drug and Biologic Products, FDA Docket No. 2000N-1269 (January 24, 2006).

## FORTY-FIFTH AFFIRMATIVE DEFENSE

The substantive law of Arkansas applies to Plaintiff's claims.

## FORTY-SIXTH AFFIRMATIVE DEFENSE

Merck pleads all defenses available to it where applicable under the Arkansas Products Liability Act of 1979.

Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Merck to determine all of its legal, contractual and equitable rights, Merck reserves the right to amend and/or supplement the averments of its Answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery.

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

Arkansas Code Annotated section 4-88-108 is so vague and ambiguous as to deny the Defendant due process of law as guaranteed by the Arkansas and United States Constitutions. The Arkansas Deceptive Trade Practices Act does not define "deceptive and unconscionable trade practice." *See* Ark. Code Ann. § 4-88-107. Section 4-88-108 provides that the "concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission" is unlawful. Ark. Code

17

Ann. § 4-88-108. This provision is unconstitutionally vague because it does not define its essential terms and does not provide a person of ordinary intelligence with fair notice of what conduct is prohibited.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

Arkansas Code Annotated Section 4-88-113(d)(3) is unconstitutional because it predicates the threshold issue of personal jurisdiction on an ultimate finding of liability at the end of the case and thereby dispenses with the constitutionally required *International Shoe* minimum contacts analysis in violation of the Due Process Clause of the Fourteenth Amendment.

### FORTY-NINTH AFFIRMATIVE DEFENSE

Merck will rely on all defenses that may become available during discovery or trial.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff's Complaint with prejudice and awarding Merck such other and further relief that the Court may deem just and proper.

### JURY DEMAND

Merck demands a trial by jury as to all issues so triable.

Respectfully submitted,

JAMES M. SIMPSON, #77125
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Ste. 2000
Little Rock, AR 72201-3493
(501) 376-2011
simpson@fec.net

Attorneys for Defendant
Merck & Co., Inc.

BY: _____
JAMES M. SIMPSON

## CERTIFICATE OF SERVICE

I, James M. Simpson, do hereby certify that the foregoing was electronically filed on May 6, 2008, with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

George R. Wise, Jr.
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR 72227

_____
JAMES M. SIMPSON

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAY - 2 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

CERTIFIED TRUE COPY

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

APR 16 2008

FILED
CLERK'S OFFICE

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                    MDL No. 1789

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO-52)**

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 123 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                    MDL No. 1789

## SCHEDULE CTO-52 - TAG-ALONG ACTIONS

**DIST. DIV. C.A. #**              **CASE CAPTION**

ARKANSAS EASTERN
   ARE  4  08-245          Kizzie Gray v. Merck & Co., Inc.

ILLINOIS NORTHERN
   ~~ILN  1  08-1687~~          ~~Zeferina Montelongo v. Winterset Dental Care, P.C., et al.~~
                                      Opposed 4/29/08

   ILN  I  08-1833          Alexa Maestranzi v. Merck & Co., Inc., et al.

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

KIZZIE GRAY                                          PLAINTIFF

VS.                      No. 4:08-CV-00245 JMM

MERCK & COMPANY, INC.                               DEFENDANT

## CORPORATE DISCLOSURE STATEMENT OF MERCK CO., INC.

Comes now Merck & Co., Inc. ("Merck") and pursuant to Fed. R. Civ. P. 7.1, states the following:

1.      Merck has no parent corporation and is unaware of any individual or entity that owns 10% or more of its common stock

Respectfully submitted,

FRIDAY, ELDREDGE & CLARK, LLP
JAMES M. SIMPSON, #77125
400 WEST CAPITOL, SUITE 2000
LITTLE ROCK, AR 72201-3522
501-376-2011 - Telephone
501-376-2147 – Facsimile
SIMPSON@fec.net - Email

By: _____
        JAMES M. SIMPSON

## CERTIFICATE OF SERVICE

I, James M. Simpson, hereby certify that a copy of the foregoing has been served upon the following counsel of record on this 7th day of May, 2008:

George R. Wise, Jr.
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, AR 72227

_____
JAMES M. SIMPSON

2

30137:0207\582021.1

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

KIZZIE GRAY

v.                              CASE NO.   4:08cv00245 JMM

MERCK & COMPANY, INC.

**INITIAL SCHEDULING ORDER**

An appearance was entered by defendant(s) on **May 6, 2008**.

**IT IS HEREBY ORDERED** that the following deadlines and proposals are in effect:

    **1.  RULE 26(f) CONFERENCE DEADLINE**:        **July 14, 2008**.

The parties are jointly responsible for holding their Rule 26(f) conference on or before the date specified.

    **2.  RULE 26(f) REPORT DUE DATE:**        **July 28, 2008**.

Consult FRCP 26(f) and Local Rule 26.1 for information to be included in the Rule 26(f) Report. The Report should be filed with the Clerk of Court.

    **3.  PROPOSED TRIAL DATE:**        **March 16, 2009** .[1]

The case will be scheduled for **JURY TRIAL** before Judge James M. Moody commencing at 9:15 a.m. sometime during the week as set forth above in **LITTLE ROCK**, **ARKANSAS.**

    **4.  RULE (16b) CONFERENCE:**  Will be scheduled, if necessary.

A telephone conference will be scheduled within one week of the filing of the Rule 26(f) Report, if necessary as determined by the Court, to resolve any conflicts among the parties with the proposed trial date and deadlines, mandatory disclosures, etc.  ***The Court anticipates setting a discovery deadline 85 days prior to the trial date, and a motions' deadline 60 days prior to the trial date***.

DATED:  May 7, 2008

                          AT THE DIRECTION OF THE COURT
                          JAMES W. McCORMACK, CLERK

                          By:  _/s/ Donna Jackson_____
                                Deputy Clerk
                                501.604.5154

---

[1]Counsel should not file a motion for continuance or send a letter to the Court if there is a conflict with the proposed trial date, but should indicate in the Rule 26(f) Report.